## DUNCAN v. THOMPSON et al.
### No. 10767.

Court of Civil Appeals of Texas. Dallas.
May 27, 1930.

Rehearing Denied June 21, 1930.

See, also, 25 S.W.(2d) 634.

W. E. West, of Canton, and Adams & Harrell, of Dallas, for appellant.

Starnes, James Clower & Gibson, of Greenville, for appellees.

JONES, C. J.

This appeal is duly prosecuted from a judgment in the district court of Van Zandt county, canceling a contract between appellant and appellees and appointing a receiver to take into possession and complete all unfinished business that had been undertaken by appellant under the contract and to perpetually enjoin appellant from performing any other work under the contract. The following is a sufficient statement to understand the issues herein discussed:

Appellant, J. L. Duncan, is an experienced and efficient developer of new town sites in oil fields. Appellees J. T. Thompson, E. L. Fowler, V. M. Fowler, and E. B. Tunnell are the owners of land in Van Zandt county in the immediate vicinity of the town of Van. In September 1929, the town of Van consisted of one or two stores and a few other houses. What is termed a discovery oil well was being sunk by an oil company near this village. While this well was being sunk, each of the appellees, owning land at and adjacent thereto, on the 27th day of September, entered into a contract with appellant for the purpose of having a town site developed by appellant on portions of their land, provided the well came in as a producer. This contract was duly executed by the parties, and is the one appellees seek to cancel. By the terms of this contract, each appellee placed at the disposal of appellant a certain described acreage of land to be used by him to plat into blocks, lots, streets, and alleys for the laying out of the contemplated town. No material work was to be done in laying out the town until the well should come in as a producing oil well. This contract specifically provided that no partnership should exist between any of the parties, and that the rights of each appellee should be considered separately from

the rights of the other appellees, and that no joint obligation on the part of appellees should be incurred by appellant. Each appellee was to retain title to his· said acreage until such time as appellant should sell any lot or lots out of same and the full consideration therefor should be paid, when such appellee should make a deed, either to appellant or direct to the purchaser. The price each appellee was to be paid was at the rate of $50 per acre. For illustration, if the lot sold was one-tenth of an acre, the owner thereof would receive $5 in full payment for such lot. Appellant was given full power in the matter of laying out the town in blocks, lots, streets, and alleys, and to prepare same for sale by the lot. He was also given full power to sell or lease lots in said town site to whomsoever· he pleased, at whatever price he chose, and upon whatever terms he deemed best. Appellees were each given the right to select a business lot and a residence lot, and, when such selections were made, such lots were to be the property of appellees, and not subject to lease or sale by appellant. Appellant bound himself to make a written report to each of appellees, on the 1st and 15th of each month, of the business transactions had by him under such contract. In addition to the payment for the land, each appellee was to receive a commission of 25 per cent. of the net proceeds of the sale of lots located on his land, and no other appellee was to share a commission on such sale, the remainder of the net proceeds to belong to appellant.

The discovery well was brought in as a large producing oil well a few days prior to the 15th day of October, 1929, and Duncan immediately began the work of developing the town site. A comparatively large number of lots were sold or leased, and, considering the time, a large number of houses were erected on lots thus disposed of. These sales were virtually all on the land of appellee Thompson. Though often requested to do so, appellant did not make a report to each of the appellees, but on the 25th day of November, 1929, he did make a written report to Thompson only. This report showed lots sold or leased for a total consideration of $37,392.-75. This report did not disclose the character of sale, other than the fact that no lots had been fully paid for, but did disclose that there had been collected the sum of $12,799.47, as partial payments on the lots sold or leased. It also contained an itemized statement of expenses amounting to $3,657.32, which was deducted by appellant from the money collected, and Thompson, the only appellee entitled to a 25 per cent. commission, was then paid substantially the amount due him on the net cash proceeds. Under the literal terms of appellant's duties under this contract, he should have made to each of the appellees a report on October 15, November 1, and November 15, 1929. There was no forfeiture provision in the contract. On November 27, 1929, the original petition was filed in this cause, praying for substantially the same relief as was prayed for by the amended petition, on which this case was tried. The prayer in the original petition, for a receiver to take charge of the contract and continue performance under its terms pending the final trial of the suit for cancellation, was granted on an ex parte hearing, and an appeal was duly perfected to this court under the required supersedeas bond. This order was reversed by this court and rendered in favor of appellant as to the matter only of the immediate necessity for a receiver. Duncan v. Thompson et al., 25 S.W.(2d) 634. Since the filing of the original petition, no report has been rendered to appellees. The trial of the cause on the amended petition was had on January 23, 1930, soon after the mandate issued from this court ˉ on the receivership appeal and judgment duly entered on an instructed verdict by the court. The judgment canceled the contract entered into between the parties on the 27th day of September, 1929, divested appellant of any possession of the lands of appellees described in the contract, and enjoined him from any future performance under the terms of the contract. The judgment also took from his possession all contracts for sale or lease of lots that appellant had theretofore entered into with various parties, placed them in the hands of a receiver for the purpose of completing performance, and enjoined appellant from doing anything under said contracts with the purchasers of lots. The judgment made no accounting between Duncan and any of the appellees, though such accounting was a part of the relief sought. The prayer of the petition is for a receiver to take charge of the contract for the purpose of continuing performance of them, pending the trial of the case on its merits.

■ It is urged that the judgment is not such a final judgment from which an appeal will lie, because there was no determination of the rights of appellees for an accounting. We overrule this suggestion, and hold that the judgment is such a final judgment. It is true that no accounting was given by the judgment between the parties, but the trial court, acting within its discretion, appointed a receiver in lieu thereof. This we think the court was authorized to do, specially in view of the fact that there was no proof offered by appellees upon which an accounting between appellant and each appellee could be based, and hence no accounting between the parties could have been given under the proof in the record. The judgment disposed of all the issues made by proof, and gave to appellees, by means of the receivership, all the rights that could have accrued to them under an accounting, and the only character of judgment in this respect that could have been rendered.

■ Appellant urges by proper assignments of error that he was entitled to peremptory instructions, for the reason that the suit was brought on the theory that appellant and appellees were engaged in a joint enterprise, and that the undisputed proof affirmatively showed that there was no joint enterprise or partnership existing between the parties. This contention is based upon the specific terms of the contract providing against such construction of any of its terms. Notwithstanding that the contract so provides, we believe that the rights of the respective parties were so interwoven with each other as to make the primary undertaking of the contract a joint enterprise. The dominant purpose of the contract was to develop a town on the lands of appellees, and the contract of each appellee had reference to, and sought to accomplish, this one dominant purpose. The assignments in this respect do not state grounds that would warrant a peremptory instruction. No plea of misjoinder was filed in the lower court.

The evidence in this case is undisputed, and, as we view it, the primary question on this appeal is whether the legal effect of such evidence warranted the trial court in canceling the contract because of the failure of appellant to perform every duty resting upon him under the terms of the contract in respect to appellees, regardless of whether such failure materially affected the performance of the primary undertaking of the contract or whether appellees were materially damaged by reason of such failure. This question must be viewed from the fact of a partial performance of the contract by appellant and the resultant equities thereby created in his favor. When the parties executed the contract, it was wholly executory in its terms, and its entire consideration consisted of the mutual promises made by appellant on the one hand and by appellees on the other. The dominant purpose of the contract was the development of a town site and the building of a town on acreage property belonging in separate pieces of land to each of the appellees. For this purpose appellees each contracted to, and actually did, deliver to the possession of appellant certain described acreage to be taken from the land owned by each. Appellant was to take into his possession each piece of land so delivered to him for the purpose of developing a town site thereon by laying it off in blocks, lots, streets, and alleys, and to build a town thereon by inducing investors to purchase lots and construct buildings. At a relatively large initial expense, appellant developed the land into a town site, in the usual manner in which such town sites are developed, by surveying the ground, laying out streets and alleys, establishing and marking on the ground the different blocks, and subdividing these blocks into lots. Within almost an incredibly short

time, investors were interested and a large number of lots contracted to be sold with partial payments made thereon; the aggregate amount of such sales, previous to the filing of this suit, represented the sum of $37,392.75. This was within a little more than a month after the discovery well had been brought in and the work actually had begun. Necessarily about all of the expense incident to the developing of the town site had already been borne by appellant, and the profits to be reaped by him in the sale of lots in the future would be much greater than the profits on these earlier sales. Appellee Thompson, on whose land almost (if not all) of the contracts for sale were made, had received a substantial sum as his share of the commissions on these sales. Each appellee owned the land contiguous to the land placed in the possession of appellant, and this land retained by each appellee was largely increased in value by the development work of appellant, previous to the filing of this suit for cancellation.

■ Under the terms of the contract, appellant should have made a report to appellees on the 15th day of October and on the 1st and 15th of November, 1929. He did make a report to appellee Thompson, on whose land alone lots had been contracted to be sold, on the 25th day of November, 1929. While this report was perhaps not as complete as it should have been, in that it did not mention the names or terms of sale of the parties who had contracted to purchase lots other than to give the sale price, the cash payment, and the amount due, this perhaps was a substantial compliance as to this one report with the terms of the contract. From it appellees could determine the number of lots contracted to be sold or leased, the amount that had been paid, the amount due to be paid, and the expenses incurred by appellant in developing the town site and in selling the lots. The deficiency of this report consists in the fact that the data given is not sufficient to check its correctness. As we understand the view of the trial court, as contained in the peremptory instruction to the jury and in the judgment rendered, the failure of appellant to make the reports to appellees under the literal terms of the contract constituted grounds for immediate cancellation of the contract. Is such the legal effect of the failure of appellant in this respect?

It must be borne in mind that the dominant purpose of building a town on appellees' properties is not affected by such failure, and that the evidence fails to show any material injury resulting to any of the appellees because of such failure. What rule of law governs in such a case? Williston on Contracts, vol. 2 p. 1610, says: "Where several promises are made by one party, a breach of one of them necessarily goes only to part of the considera-

tion, but it may be a large part, or it may be a small part. A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform, if the main promise to him has been or is being substantially performed." Page on the Law of Contracts, vol. 6, p. 5954, § 3404, announces the rule more specifically applying to the facts of the instant case, and declares that: "If a substantial part of the contract has been performed, a breach of other covenants of the contract is not ground for cancellation, unless the covenant which is broken is a vital part of the contract, without which the remaining covenants would not have been undertaken." In the case of Hausler v. Harding-Gill Co., (Tex. Civ. App.) 6 S.W.(2d) 445, 446, the rule is announced as follows: "It is the rule that every partial failure to comply with the terms of a contract cannot be made the basis of a rescission, but it must be such failure as goes to the vitality of the contract. It must defeat the object and aim of the contract. It is held that, before a partial failure of performance can be the basis for rescission, it must go to the very root of the contract by a breach of one of its essential terms."

The reported case was a suit for a rescission of a contract wholly executory at the time breach of one of its material promises by defendant occurred, and the Supreme Court, through the Commission of Appeals, in Hausler v. Harding-Gill Co., 15 S.W.(2d) 548, 549, reversed the Court of Civil Appeals in its holding that the breach in the reported case was a promise not vital to the performance of the contract. The following language from the decision is very pertinent to the facts of this case, in that it inferentially declares the rule we apply in this case: "Here defendant in error has breached the executory contract in a material respect in such a way as necessarily to show that injury which must always be present to authorize a rescission (citing authorities), and there has been no part performance by the company that would in any wise render it inequitable to grant such relief." In other words, the pronouncement of the Court of Civil Appeals, as above quoted, is modified to the extent that the rule of law there stated, as to the effect of the breach of a material provision in a contract, does not apply where the contract sought to be rescinded is wholly executory, and, to grant such relief, would not "in any wise render it inequitable" to the defendant. In the instant case, the town was being rapidly developed, and the primary purpose of the contract being carried out when suit to cancel was filed. It is clear from the record that, to allow the cancellation, not only would great injury be visited upon appellant, but it does not affirmatively appear that appellees have been injured by the failure to make

these reports. In our view, under the rule of law above announced, we think the trial court erred in its construction of the legal effect of the undisputed evidence. See, also, 13 C. J. p. 613, 6 R. C. L. p. 926, and authorities cited in each.

 The validity of that portion of the judgment appointing a receiver necessarily depends on the validity of the judgment canceling the contract. Therefore the receivership necessarily falls with the judgment on which it depends. It is our opinion that this case, in so far as it decrees a cancellation of the contract and appoints the receiver, must be reversed and here rendered in favor of appellant, and it is so ordered.

Appellees have asked for an accounting, and, in the view we take of this case, they are entitled to relief in this respect. We therefore reverse and remand the case, with instructions to the trial court to require appellant, within a reasonable time, not exceeding 30 days from the issuance of the mandate herein, to prepare and file full and complete reports as contemplated by the contract, and to require by specific order that appellant, in the future work of carrying out this contract, file such reports at the times provided for by such contract. If any question be raised as to the correctness and completeness of the reports herein required to be filed, such question must be adjudicated by the trial court in conformity to the rules of law governing such matters.

Reversed and rendered as to the cancellation of the contract and the appointment of a receiver; reversed and remanded as to the matter of filing the reports and thereby making an accounting to appellees.